UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN MILLER and ERICA
MILLER,

    Plaintiffs,

v.              Case No. 6:25-cv-502-JA-NWH

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

    Defendant.

_____

### ORDER

This case is before the Court on Defendant's motion for summary judgment (Doc. 16), Plaintiffs' response (Doc. 24), and Defendant's reply (Doc. 26). Based on the Court's review of the parties' submissions, the motion must be granted.

## I. BACKGROUND

Plaintiffs, John and Erica Miller, insured their real property in Lake Mary, Florida, under a homeowner's insurance policy issued by Defendant, Liberty Mutual Fire Insurance Company. (*See* Doc. 16-1). The property was damaged by Hurricane Helene in September 2024. (Doc. 16-2; Doc. 17 ¶ 5). The Millers notified Liberty Mutual and, upon inspection, Liberty Mutual confirmed that the damage to two gutter-downspout systems, a soffit panel, and resulting

interior water damage in two rooms was covered by the policy. (Doc. 16-2 at 1). However, Liberty Mutual determined that the damage to roof tiles and mortar, as well as the majority of interior ceiling stains, was caused by non-storm-related wear and tear excluded by the policy. (*Id.* at 1–2). Liberty Mutual calculated the actual cash value (ACV) of the covered loss to be $5,961.55—below the policy's $15,834.78 hurricane deductible. (Doc. 17 ¶¶ 5, 7). Consequently, Liberty Mutual did not tender any payment to the Millers. (*Id.* ¶¶ 2–3).

The Millers served a statutory Notice of Intent to Initiate Litigation as required by section 627.70152(3), Florida Statutes, and enclosed an estimate from ROC Roofing totaling $156,400 for a full roof replacement. (*Id.* ¶ 8). The parties never reached an agreement regarding the scope of the loss, and the Millers filed this breach-of-contract action in state court. (Doc. 1-1). Liberty Mutual removed the case to this Court based on diversity jurisdiction and now moves for summary judgment, arguing there is no genuine dispute that it did not breach the policy. (Doc. 1; Doc. 16).

## II.    LEGAL STANDARDS

On a motion for summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). "The court shall grant summary judgment if the movant shows that there is no genuine

2

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden then shifts to the non[]moving party" to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To defeat the motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.   DISCUSSION

Because this Court sits in diversity, it must apply Florida substantive law to the breach-of-contract claim. *See Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). To prevail on a breach-of-contract claim on summary judgment, the movant must demonstrate the absence of a genuine dispute regarding: "(1) a valid contract; (2) a material breach; and (3) damages."

3

*Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).[1] The interpretation of an insurance policy is a question of law to be decided by the court. *Allstate Ins. Co. v. Swain*, 921 So. 2d 717, 719 (Fla. 3d DCA 2006); *Canal Indem. Co. v. Margaretville of NSB, Inc.*, 562 F. App'x 959, 961 (11th Cir. 2014).[2]

Liberty Mutual contends it did not breach the policy because it afforded coverage based on its ACV estimate and the Millers failed to submit a competing pre-suit ACV estimate to challenge that valuation. Liberty Mutual relies on the following policy provision, which mirrors the requirements of section 627.7011(3)(a), Florida Statutes:

> **3. Loss Settlement**. Covered property losses are settled as follows:
> . . . .
> b. (4) We will initially pay at least the [ACV] of the insured loss, less any applicable deductible. We shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred.

---

[1] "A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

[2] In the Eleventh Circuit, "unpublished decisions . . . bind no one," *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016), but "may be cited as persuasive authority," 11th Cir. R. 36-2.

(Doc. 16-1 at 17–38). In sum, Liberty Mutual argues it fulfilled its contractual obligations by admitting coverage, calculating the ACV, and applying the policy deductible.

Because it acknowledged coverage, the initial burden rests with Liberty Mutual to show that it provided the insureds an estimate of "at least the [ACV] of the insured loss." *Homeowners Choice Prop. & Cas. Ins. Co. v. Clark*, 410 So. 3d 99, 111–12 (Fla. 1st DCA 2025) (quoting § 627.7011(3)(a), Fla. Stat.). Unlike replacement cost value (RCV), ACV is calculated by deducting depreciation from the total replacement cost. *See Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013). Under the plain language of both the policy and the statute, Liberty Mutual had the "option to initially pay only [ACV] and to withhold the rest of the replacement costs until the work is completed." *Brito v. Citizens Prop. Ins. Corp.*, 415 So. 3d 252, 255 (Fla. 2d DCA 2025).

To satisfy its initial burden, Liberty Mutual relies on the affidavit of its claims adjuster, John Tucker, which incorporates Liberty Mutual's ACV estimate. (Doc. 17). In his affidavit, Mr. Tucker affirms that Liberty Mutual timely prepared the estimate and never received a competing ACV estimate from the Millers during the claims-handling process. (*Id.* ¶¶ 7, 9). Although the Millers challenge the affidavit's evidentiary foundation and whether it properly authenticates Liberty Mutual's ACV estimate (Doc. 24 at 6–12), their arguments fail. As the adjuster assigned to this claim, Mr. Tucker possesses the

requisite personal knowledge to satisfy Federal Rule of Civil Procedure 56(c)(4) based on his direct involvement and his review of the claim file. (Doc. 17 ¶¶ 1–2); *see Mims v. Old Line Life Ins. Co. of Am.*, 46 F. Supp. 2d 1251, 1258 (M.D. Fla. 1999) (crediting a summary-judgment affidavit based on the affiant's "review of the underwriting file, the policy, [and] the claim file"). Furthermore, the affidavit properly authenticates Liberty Mutual's ACV estimate as a business record under Federal Rule of Evidence 803(6), which is admissible at summary judgment because it can be reduced to an admissible form at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012).

Because Mr. Tucker's affidavit establishes that Liberty Mutual timely prepared an ACV estimate, the burden has shifted to the Millers to demonstrate that Liberty Mutual underpaid the claim. *See Clark*, 410 So. 3d at 112. That Liberty Mutual never disbursed any funds because its ACV valuation fell below the policy deductible is of no moment; an insurer fulfills its obligations by performing a timely valuation and applying the deductible. *See Citizens Prop. Ins. Corp. v. Salazar*, 388 So. 3d 115, 117 (Fla. 3d DCA 2023).

To attempt to meet their burden, the Millers provide an estimate from Sean Baumgartner, a price-and-scoping expert, who opines that the ACV amount required to return the property to its pre-loss condition is $239,573.54. (Doc. 25-1 ¶¶ 15–16). However, this estimate was prepared on June 16, 2025—nearly four months after the Millers initiated this action on February 21, 2025—

6

and was provided to Liberty Mutual for the first time with the Millers' summary-judgment response. (Doc. 25-1 at 17; Doc. 1-1 at 4; Doc. 26 at 1). Under Florida law, Mr. Baumgartner's post-suit estimate cannot be used to establish a breach of the policy. *See Bailetti v. Universal Prop. & Cas. Ins. Co.*, 424 So. 3d 994, 998 (Fla. 1st DCA 2025) (explaining that ACV estimates prepared after a lawsuit is filed cannot be used to show that an insurer was in breach at the time of filing); *Mulas v. Westchester Surplus Lines Ins. Co.*, No. 2:24-cv-534, 2026 WL 261573, at *3 n.4 (M.D. Fla. Feb. 2, 2026) (applying the same principle). An estimate created months after litigation has commenced is irrelevant to whether Liberty Mutual fulfilled its obligations under the policy. *See Jeremy Stewart Constr., Inc. v. Matthews*, 324 So. 3d 41, 42 (Fla. 1st DCA 2021).

Setting aside Mr. Baumgartner's estimate, the Millers' only evidence disputing Liberty Mutual's ACV valuation is the ROC Roofing proposal, which was attached to their pre-suit Notice of Intent to Initiate Litigation. (Doc. 1-4 at 3–5).[3] The ROC Roofing proposal does not set forth separate line items for ACV

---

[3] Curiously, the Millers seek to exclude the ROC Roofing proposal on the grounds that it is inadmissible under section 627.70152(6), Florida Statutes. (*See* Doc. 24 at 11). If the Court excluded the ROC Roofing estimate, the record would be devoid of evidence to contradict Liberty Mutual's ACV valuation. In any event, because section 627.70152(6) establishes a state evidentiary rule, the provision does not apply in federal court. *See Integrity Plaza LLC v. Westchester Surplus Lines Ins. Co.*, No. 2:24-cv-723-JLB-KCD, 2024 WL 4563382, at *2 (M.D. Fla. Oct. 24, 2024).

and RCV; therefore, it must be treated as an RCV estimate. *See Clark*, 410 So. 3d at 107 (determining that estimates that do not allocate depreciation must be treated as RCV estimates and that juries are not permitted to speculate about appropriate depreciation based on an RCV estimate); *Pauly v. Hartford Ins. Co. of the Midwest*, No. 2:24-cv-874, 2025 WL 1677514, at *5 (M.D. Fla. June 13, 2025) (explaining that "when ACV and RCV in an estimate are identical, the estimate is really one for RCV, not ACV, because it [does] not account for depreciation"). The policy's distinction between ACV—the value of the physical damage to the property minus depreciation—and RCV—the actual costs necessary to repair and replace that damage—is crucial. (*See* Doc. 16-1 at 27).

The standard loss-settlement provision of the policy at issue here, modeled on the requirements of section 627.7011(3)(a), Florida Statutes, has resulted in a "near-uniform consensus" that insurer liability for RCV does not arise until repairs have been completed. *Funbar Hall LLC v. Nat'l Fire & Marine Ins. Co.*, No. 2:25-cv-318, 2026 WL 247058, at *2 (M.D. Fla. Jan. 30, 2026) (citing *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007)); *Vazquez v. S. Fid. Prop. & Cas., Inc.*, 230 So. 3d 1242, 1242 (Fla. 3d DCA 2017). The Millers do not point to any evidence that repairs have been completed on the property. (*See* Doc. 17 ¶ 9). Because an insured is entitled to RCV only "as work is performed and expenses are incurred," *Universal Prop. & Cas. Ins. Co. v. Qureshi*, 396 So. 3d 564, 566 (Fla. 4th DCA 2024), Liberty Mutual was not

obligated to pay based on ROC Roofing's RCV proposal at the time this action was initiated.

That no record evidence exists of the Millers' pre-suit challenge to Liberty Mutual's ACV valuation is fatal to their claim. In theory, the ROC Roofing proposal, which is substantially higher than Liberty Mutual's ACV valuation, could be viewed as "evidence" of a disagreement as to ACV. *See Francis v. Tower Hill Prime Ins. Co.*, 224 So. 3d 259, 261 (Fla. 3d DCA 2017) (opining that "widely-divergent estimates of covered repair costs create[] a genuine issue of material fact precluding summary judgment"). But that inference is foreclosed by recent Florida case law, which has taken a formalistic approach to this issue.

This case is analogous to *Clark*, which held that when "(1) an insured's estimate and evidence provide[] only for RCV costs and (2) no evidence is presented to challenge the insurer's ACV payout, no breach of contract occurs." *Clark*, 410 So. 3d 99, 112 (citing *Salazar*, 388 So. 3d at 118). No breach occurred here because at the time this action was initiated, Liberty Mutual "was not yet obligated to pay any additional amount." *Salazar*, 388 So. 3d at 118; *see also CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 192–93 (11th Cir. 2021) (holding that an insurer cannot breach a policy by failing to pay based on an RCV estimate when only ACV is owed); *Qureshi*, 396 So. 3d at 566. Indeed, "even if Plaintiff[s'] claim could be construed as an ACV claim, the record contains no evidence of depreciation from which a jury could determine

what the ACV of the loss was or whether it was more than the policy deductible." *Monterrey's Grill Inc. v. Axis Surplus Ins. Co.*, No. 3:23-cv-24580, 2025 WL 1379574, at *2 (N.D. Fla. May 13, 2025).

In general, "[a] disagreement between the parties as to the scope and extent of the damage is resolved by a factfinder," *Clark*, 410 So. 3d 99, 111–12 (citing *Salazar*, 388 So. 3d 115, 118), but where "no evidence can support a disagreement as to ACV, a factfinder cannot conclude which of the two amounts is correct." *Id.* This is not a case concerning disagreements about what items should be included in an ACV estimate, *see, e.g., Weston v. Universal Prop. & Cas. Ins. Co.*, 425 So. 3d 638, 643 (Fla. 2d DCA 2025), nor does it pertain to RCV estimates created in response to denied claims, *see Citizens Prop. Ins. Corp. v. Tio*, 304 So. 3d 1278, 1280 (Fla. 3d DCA 2020); *Universal Prop. & Cas. Ins. Co. v. Rodriguez*, No. 6D2024-1194, 2026 WL 370220, at *2 (Fla. 6th DCA Feb. 6, 2026). Rather, this is a case where the insurer afforded coverage and prepared an ACV estimate, but no evidence was timely submitted to counter the insurer's ACV findings.

The Millers protest that the policy does not require them to produce an ACV estimate as a prerequisite to filing suit. (Doc. 24 at 14–15). They are correct that the lack of a competing ACV estimate does not result in a jurisdictional or contractual bar to suit. And the Millers rightly note that an insurer is not

10

entitled to "unilaterally determine" ACV. *Siegel v. Tower Hill Signature Ins. Co.*, 225 So. 3d 974, 978–79 (Fla. 3d DCA 2017); (Doc. 24 at 16–17).

The relevant inquiry is not whether Liberty Mutual correctly calculated ACV, but whether it breached the policy. It did not. At the time the Millers filed suit, they sought only nonrecoverable damages; thus, Liberty Mutual owed them nothing. While this outcome is troubling, it is called for by the consumer-unfriendly burden-shifting framework set forth in the policy and section 627.7011(3)(a), Florida Statutes, as interpreted by Florida courts. Summary judgment is warranted because the undisputed evidence shows that Liberty Mutual fully complied with the policy in handling the Millers' claim.

## IV.    CONCLUSION

For the reasons given above, it is **ORDERED** that Defendant's motion for summary judgment (Doc. 16) is **GRANTED**. The Clerk is directed to enter a judgment providing that Plaintiffs take nothing from Defendant on their claims in this case. All other pending motions are **DENIED** as moot. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida, on March _19_, 2026.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:

11

Counsel of Record